UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PETER GARCIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 1:18-cv-00019-NT |
| | ) |
| MAINEGENERAL HEALTH, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Before the Court is the Defendant's motion to dismiss or stay the case and to compel arbitration. (ECF No. 9.) For the reasons stated below, the motion to compel arbitration is **GRANTED** and the case is **DISMISSED**.

**BACKGROUND**

Plaintiff Peter Garcia brings this employment discrimination action against MaineGeneral Health ("**MaineGeneral**"). The Plaintiff alleges three counts: a violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("**ADA**") (Count I); a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("**ADEA**") (Count II); and a claim of retaliation because of his ADA and ADEA claims (Count III). Compl. (ECF No. 1).

The parties entered a Physician Employment Agreement (the "**Agreement**") in June 2017, which called for the Plaintiff to be employed as a primary care physician and medical director. *See* Compl. ¶¶ 13, 19; Pl.'s Attach. A (ECF No. 1-1); Agreement (ECF No. 10-1). The Agreement provided that the Plaintiff's two year term of

employment would begin after he became licensed to practice medicine in Maine. Agreement 1, 9. A resident of Florida, the Plaintiff did not have a Maine medical license when the Agreement was signed. *See* Compl. ¶¶ 4, 22.

The Plaintiff had not practiced clinical medicine for a number of years due to bilateral sensorineural hearing loss, and so he was unable to produce letters from other physicians attesting to his clinical competency, as required to receive a medical license. Compl. ¶¶ 24-26; Pl.'s Attach. C at 3 (ECF No. 1-3). The Defendant agreed to provide a preceptor program through which MaineGeneral physicians would observe the Plaintiff in clinical practice and then provide the necessary letters to the Board of Medicine. Compl. ¶ 27. A dispute between the parties arose as to the nature and duration of the observation period that the Plaintiff would undergo. Compl. ¶¶ 28-33. The Plaintiff also complained that the Defendant was communicating with the Board of Medicine about a proposed program without including him on the messages. Compl. ¶ 38; Pl.'s Attach. C at 5. Following a series of conversations between the parties, the Defendant informed the Plaintiff on August 17, 2017, that it planned to unilaterally cancel the contract. Compl. ¶ 71.

The Agreement contained a provision titled, "ARBITRATION AND WAIVER OF JURY TRIAL." Agreement 11. It provides

> The parties agree to make a good faith attempt to resolve informally any and all controversies, disputes, or claims between the parties, except as specifically set forth herein. Failing such informal resolution, all such controversies, disputes, or claims between the parties shall be resolved by arbitration proceedings conducted in accordance with the Arbitration Rules of the American Health Lawyers Association Alternative Dispute Resolution Service ("AHLA-ADRS"). By agreeing to arbitration, the parties specifically intend to irrevocably waive, to the extent permitted

by law, any rights that may be afforded to either party under any and all statutory claims. The parties' obligations to arbitrate shall be subject to the following: . . .

6. This arbitration procedure shall be the exclusive means of settling any and all controversies, disputes, or claims between the parties, including statutory, common law, or otherwise; provided, however, that the requirements hereof shall not apply to (i) any claims or threatened claims involving professional medical malpractice, (ii) Medical Staff corrective actions, as applicable, (iii) any decision not to renew this Agreement, or (iv) claims involving the confidentiality of information, as contained herein.

Agreement 11-12.

## LEGAL STANDARD

The Federal Arbitration Act (the "**FAA**") "reflects 'a federal liberal policy favoring arbitration agreements.'" *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 60 (1st Cir. 2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)). "However, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 52 (1st Cir. 2002) (quotation marks omitted). The FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA further establishes that

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Federal courts will grant a motion to compel arbitration pursuant to the FAA when "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008) (quoting *Bangor Hydro-Elec. Co. v. New England Tel. & Tel. Co.*, 62 F. Supp. 2d 152, 155 (D. Me. 1999)).

## DISCUSSION

The Defendant argues that the factors required to compel arbitration are present and the Court should dismiss, rather than stay, the case, because all of the Plaintiff's claims are arbitrable and dismissal makes any appeal more efficient. Def.'s Mot. 3-5. The Plaintiff maintains that the motion should be denied. Considering the Plaintiff's Response along with his Surreply,[1] I interpret his arguments as being three fold: (1) that, because he never received his Maine license to practice medicine, no valid instrument requiring arbitration ever came into existence; (2) that if such an agreement was formed, it is unenforceable because it is unconscionable; and (3) that the Defendant has waived its right to arbitrate by failing to act in good faith. Pl.'s Resp. (ECF No. 12). I address each of the Plaintiff's arguments in turn.

---

[1]   I am exercising my discretion to consider the Plaintiff's Surreply largely because he is a pro se litigant. *See, e.g.*, *Szillery v. Career Sys. Dev. Corp.*, No. CV-08-62-B-W, 2008 WL 2789492, at *3 (D. Me. July 17, 2008).

## I. Whether There Is an Enforceable Written Agreement to Arbitrate

" '[A] court should not compel arbitration unless and until it determines that the parties entered into a validly formed and legally enforceable agreement covering the underlying claims(s).' " *Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 80 (1st Cir. 2018) (quoting *Escobar-Noble v. Luxury Hotels Int'l of P.R., Inc.*, 680 F.3d 118, 121 (1st Cir. 2012)). The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. " 'When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.' " *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 7 (1st Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). As provided for in the Agreement, I apply Maine law to this dispute. Agreement 12.

### A. Whether a Contract was Formed

The Plaintiff argues that no contract came into existence because the condition precedent to the Employment Agreement's formation—his acquisition of a license to practice medicine in Maine—never occurred. Pl.'s Resp. 5 (no enforceable contract because "the hiring process was never complete and he never became an employee"). According to the Plaintiff, since no contract was ever formed, there can be no agreement to arbitrate. *See Adams v. Suozzi*, 433 F.3d 220, 226 (2d Cir. 2005) ("If the contract embodying a purported arbitration agreement never existed, the arbitration agreement itself does not exist."). The Defendant responds that a contract may be valid even where performance does not occur. Def.'s Reply 2 (ECF No. 17).

Generally speaking "[i]n the law of contracts, conditions may relate to the existence of contracts or to the duty of immediate performance under them." 13 Williston on Contracts § 38:4 (4th Ed.). *Compare Curran v. Ruffing*, 792 A.2d 1090, 1093 (Me. 2002) ("These provisions are condition precedents to the existence of a binding contract."), *with Chamberlain v. Porter*, 562 A.2d 675, 676-77 (Me. 1989) (sale of property was condition precedent to seller's duty to pay broker's commission). The Plaintiff would be correct that he has no duty to arbitrate if obtaining a medical license was a condition precedent to the *formation* of the contract. The problem with the Plaintiff's argument is that it misses the subtle legal distinction between conditions relating to formation and conditions relating to performance. Most conditions precedent describe an event "which must occur before a party is obliged to perform a promise made pursuant to an existing contract, a situation to be distinguished conceptually from a condition precedent to the formation or existence of the contract itself." *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995).

The conditional language of the Agreement appears in "Section VI," captioned "TERM OF EMPLOYMENT." It reads:

> Subject to . . . physician fulfillment of the required qualifications set forth in Section III[2] herein, the term of Physician's employment hereunder shall be for an initial term of 2 years, beginning on the later of (a) July 1, 2017 or (b) the fulfillment of the conditions set forth in Section III hereof ("Commencement Date") and ending on the second anniversary of such Commencement Date, and shall automatically

---

[2] Section III, headed "QUALIFICATIONS," provides in pertinent part that "Physician shall be licensed to practice medicine in the State of Maine." Agreement 1.

> renew for subsequent one (1) year terms thereafter, unless terminated earlier in accordance with the terms and conditions of this Agreement, provided, however, if such conditions are not fulfilled on or prior to August 1, 2017, Employer shall be entitled to terminate this Agreement with no further obligation to Physician.

Agreement 9. The condition here triggers the Plaintiff's start date and term of employment, and the parties' duties to perform. Agreement 9. The parties could have, but did not, state that the Agreement does not come into effect until the condition is fulfilled. *See, e.g., Irving v. Town of Clinton*, 711 A.2d 141, 142 (Me. 1998) ("This contract is contingent upon voter approval.").

The non-occurrence of the condition also has a legal effect under the contract. If the Plaintiff does not acquire his license by August 1, 2017, the contract allows the Employer to terminate the Agreement. Agreement 9. The language regarding termination presupposes that the contract is already in existence.

The Complaint alleges that on August 17, 2017, General Counsel for the Defendant notified the Plaintiff that it was "unilaterally cancelling the contract." Compl. ¶ 71. The termination of a contract does not mean that the parties are no longer required to arbitrate disputes that arise under that contract. *Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 252 (1977) ("[T]he parties' obligations under their arbitration clause survive[] contract termination when the dispute [is] over an obligation arguably created by the expired agreement."). Because I find that acquiring a Maine medical license is a condition precedent to the parties' performance, the Agreement—including its arbitration clause—is enforceable.

### B. Whether the Agreement is Unconscionable

The Plaintiff has the burden to show that the arbitration clause is unconscionable. *Bose Corp. v. Ejaz*, 732 F.3d 17, 23 (1st Cir. 2013). Although the Supreme Judicial Court in Maine "has not yet ruled on an unconscionability challenge to an employment (or any other) arbitration provision under Maine law," it has discussed the standard for unconscionability outside of arbitration. *Brackett v. Gen. Dynamics Armament*, No. CIV. 10-176-P-H, 2010 WL 2628525, at *2 (D. Me. June 25, 2010). In *Bither v. Packard*, 98 A. 929, 933 (Me. 1916), the Law Court wrote that contractual unconscionability would have to "shock the conscience, and amount in itself to conclusive and decisive evidence of fraud." *See also Barrett v. McDonald Investments, Inc.*, 870 A.2d 146, 155 (Me. 2005) (Alexander, J., concurring) (suggesting factors of unconscionability for arbitration agreements).

"[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *see also Nat'l Fed'n of the Blind*, 904 F.3d at 81 ("A challenge to the validity of an entire contract containing an arbitration provision must go to an arbitrator [and] a challenge to the validity of the arbitration provision itself must be decided by the court.").

The Plaintiff argues that the Agreement is unenforceable because it is unconscionable, and he cites numerous factors in support of that claim. He claims that: (1) the contract is one of adhesion between parties with unequal bargaining power; (2) the Defendant exploited the Plaintiff's family motivations to find employment in the area; (3) the Defendant has greater resources to spend on

arbitration; (4) the Defendant has such strong ties to the state and the community that arbitration in Augusta would not be fair; (5) the arbitration process will eliminate the Plaintiff's right to appeal; and (6) the arbitration provision's prohibition on punitive and exemplary damages deprives him of his statutory rights. Pl.'s Surreply 5-6.

The existence of an adhesion contract, the parties' unequal bargaining power, and the exploitation of the Plaintiff's family situation are all challenges to the validity of the contract as a whole. Because they are not specific to the arbitration clause, those claims must be brought to the arbitrator. *See Nat'l Fed'n of the Blind*, 904 F.3d at 81.

The Plaintiff has not pleaded sufficient facts or presented an evidentiary record to support a finding that the arbitration clause is unconscionable because of the Defendant's greater resources. Without evidence about either his resources or the costs of arbitration, I cannot hold that the cost of arbitration is prohibitive. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). The parties' relative resources, standing alone, do not impact whether "the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013). The Plaintiff argues that the difference in resources between the parties will "profoundly limit discovery," but he does not explain how that is so. Nor does he explain how any differences in resources would curtail his ability to arbitrate in Maine any more than it would to litigate in Maine. *See* Pl.'s Surreply 5.

As to the Defendant's ties to the community, the Plaintiff presents no evidence of an actual bias as to all arbitrators in the Augusta area, and the Plaintiff provides no authority to support his claim that because a party is well-known in an area, arbitration in that region would be unfair. Further undercutting this argument, the Plaintiff has input into the identity of the arbitrator. Agreement 11 (providing that parties shall jointly select arbitrator or shall each appoint an arbitrator and those two arbitrators shall select a third arbitrator).

The limitations on the Petitioner's right to appeal an arbitrator's determination do not make the arbitration clause unconscionable. They are fully consistent with the FAA and are at play in every arbitration agreement. 9 U.S.C. §§ 9-11; *see Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008).

Finally, I consider whether the Agreement's prohibition on punitive and exemplary damages makes the arbitration provision unenforceable.[3] The Plaintiff does not develop this argument, having only raised it in his Surreply, and the Defendant has not had an opportunity to respond to it. The First Circuit has considered and rejected a similar argument. *Anderson v. Comcast Corp.*, 500 F.3d 66, 71 (1st Cir. 2007). In *Anderson*, the First Circuit initially noted that a "remedy stripping provision of [an] arbitration agreement pose[s] a question of arbitrability—i.e., that the court rather than the arbitrator should decide in the first instance

---

[3]   I interpret this argument as an effective vindication challenge to the arbitration provision. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (An arbitration clause is only enforceable "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum.").

whether the conflict between the arbitration agreement and the statute prevent[s] [the plaintiff] from vindicating her statutory rights." *Anderson*, 500 F.3d at 73 (citing *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006)). *Anderson* addressed an argument that the arbitration agreement's prohibition against multiple damages conflicted with the Massachusetts Consumer Protection Act, which allows multiple damages to be awarded upon a finding that a willful or knowing violation occurred. The First Circuit concluded that because the plaintiffs' available remedies turned on a question of fact, the issue belonged to the arbitrator in the first instance. *Anderson*, 500 F.3d at 75.

Here, the Plaintiff may be entitled to punitive damages under the ADA if, in addition to proving a substantive ADA violation, he can show that the Defendant "discriminate[d] in the face of a perceived risk that its actions [would] violate federal law." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999). As in *Anderson*, this is a factual determination left to the arbitrator, and it does not prevent enforcement of the arbitration clause. *See Anderson*, 500 F.3d at 75.

For the forgoing reasons, I conclude that the parties entered into a validly formed and legally enforceable agreement covering the Plaintiff's claims.[4] I thus proceed to address the Plaintiff's argument that the Defendant waived its right to compel arbitration.

---

[4] The Agreement calls for the arbitration of "all controversies, disputes, or claims between the parties," subject to a few exclusions not applicable to the instant dispute. The Plaintiff does not contend that his claims fall outside the scope of the arbitration clause, and it appears that the dispute over the failure to complete the Plaintiff's hiring falls comfortably within the arbitration clause's broad scope.

## II. Whether the Defendant Waived its Right to Arbitrate by Failing to Act in Good Faith

The Plaintiff makes two arguments that are based on a waiver theory. First, he contends that the Defendant did not act in good faith, as required by the Agreement, and thus has waived its right to arbitrate. Second, he argues that the Defendant could have sought arbitration long before it did and should not be allowed to demand arbitration now.

The Plaintiff's argument that the Defendant has waived arbitration by failing to first make a good faith attempt to resolve the dispute informally, as the Arbitration Provision requires, fails at the gate. Pl.'s Resp. 6-7. A similar argument was rejected by the First Circuit in *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367 (1st Cir. 2011). There, the plaintiffs also asserted that they could not be required to arbitrate because the defendant had not engaged in good faith negotiation to resolve the dispute before seeking arbitration as the contract required. The First Circuit held that the determination of whether the defendant had complied with the arbitration clause's "good faith negotiations" pre-condition to arbitration was an issue for the arbitrator to decide. *Dialysis Access Ctr.*, 638 F.3d at 383. *Dialysis Access Center* controls this case.

The Plaintiff also argues that the Defendant waived its right to arbitrate by failing to seek arbitration at an earlier time. "[A]rbitration clauses are not set in cement: such clauses may be waived, either expressly or through conduct." *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 946-47 (1st Cir. 2014). To determine if a conduct-based waiver has occurred, I examine "whether there has been an undue

delay in the assertion of arbitral rights and whether, if arbitration supplanted litigation, the other party would suffer unfair prejudice." *Id.* at 948. In making this determination I consider

> the length of the delay, the extent to which the party seeking to invoke arbitration has participated in the litigation, the quantum of discovery and other litigation-related activities that have already taken place, the proximity of the arbitration demand to an anticipated trial date, and the extent to which the party opposing arbitration would be prejudiced.

*Id.* I find that none of these factors support a finding of waiver. The First Circuit has held that an employer does not waive its right to arbitration by failing to file a motion to compel during the pendency of EEOC proceedings. *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 16 (1st Cir. 2005). Here, the Defendant moved for arbitration shortly after the action was filed and before discovery. *See* Def.'s Mot. A trial schedule has not been set and there has been no delay to prejudice the Plaintiff.[5]

## III. Dismiss or Stay

Having concluded that the Plaintiff's claims against the Defendant are arbitrable, the remaining question is whether to dismiss or stay the action. The Defendant has requested dismissal and a stay in the alternative. Def.'s Mot. 5. In the First Circuit, federal courts have discretion to either dismiss or stay when all the issues before the court are arbitrable. *Baker v. Securitas Sec. Servs. USA, Inc.*, 432 F. Supp. 2d 120, 127 (D. Me. 2006) (citing *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141,

---

[5] Plaintiff quotes at length from *Brennan v. King*, 139 F.3d 258 (1st Cir. 1998), to argue that he "does not need to request arbitration." Pl.'s Resp. 9 (ECF No. 12). While it may be true that Plaintiff does not have to request arbitration, he has signed an Agreement with a valid arbitration clause. If the other side moves to compel arbitration of a dispute that falls within the scope of the clause, as has happened here, I must either dismiss or stay the case pending arbitration. I fail to see how *Brennan* helps the Plaintiff at all.

156 n.21 (1st Cir. 1998)). *But see Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) (concluding the FAA requires a stay and noting a circuit split on the issue).

The advantages of dismissal are well established:

> "Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner provided by law. This course of action will also make the arbitrability issue immediately appealable and will avoid the litigation expenses and delay if the arbitration conducted were vacated by a later appeal."

*Baker*, 432 F. Supp. 2d at 127 (quoting *Boulet v. Bangor Sec. Inc.*, 324 F. Supp. 2d 120, 127 (D. Me. 2004)).

In light of the foregoing, I conclude that dismissal is appropriate.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Plaintiff's motion for leave to file a Surreply and **GRANTS** the Defendant's motion to dismiss and compel arbitration.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 20th day of November, 2018.